UNITED STATES v. SNOHOMISH RIVER BOOM CO. et al.

(District Court, W. D. Washington, N. D.   May 10, 1916.)

INDIANS ☞12—RESERVATION—BOUNDARY—TREATIES.

Treaty and executive order construed with respect to boundary of an Indian reservation on the shore of Puget Sound.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 27, 28; Dec. Dig. ☞12.]

Action by the United States against the Snohomish River Boom Company and the Everett Improvement Company.  On motion by defendants to dismiss.  Motion granted.

Clay Allen, U. S. Atty., and Winter S. Martin, Asst. U. S. Atty., both of Seattle, Wash.

J. A. Coleman, of Everett, Wash., and Francis H. Brownell, of Seattle, Wash., for defendants.

NETERER, District Judge.   The United States seeks to recover from the defendants the possession of certain tidelands situated at Port Gardner, Snohomish county, Wash.   The land was sold by the state of Washington to the Everett Improvement Company as tidelands, and was by the Improvement Company leased to the Boom Company.   The issue involves the construction of executive order of December 23, 1873, and the Indian treaty of 1855 (Act Jan. 22, 1855, 12 Stat. 928).   Section 2 of the treaty provides, among other things:

"That the amount of two sections, or 1,280 acres, on the north side of Hwhomish Bay and the creek emptying into the same called Kwilt-seh-da, the peninsula at the southeastern end of Perry's Island, * * * all of which tract shall be set apart, and so far as necessary surveyed and marked out for their exclusive use. * * *"

And further that:

"There is also reserved from out the lands hereby ceded the amount of thirty-six sections, or one township, of land on the northeastern shore of Port Gardner, and north of the mouth of Snohomish river, including Tulalip Bay and the before-mentioned Kwilt-seh-da creek. * * *"

And article 4:

"The said tribes and bands agree to remove to and settle upon the said first above-mentioned reservations within one year after the ratification of this treaty, or sooner, if the means are furnished them. * * *"

Article 5:

"The right of taking fish at usual and accustomed grounds and stations is further secured to the Indians. * * *"

President Grant, December 23, 1873, by executive order, fixed the boundaries of the Tulalip Indian reservation pursuant to the treaty, as follows:

"Beginning at low-water mark on the north shore of Steamboat Slough, at a point where the section line between sections 32 and 33 of township 20

north, range 5 east, intersects the same; thence north; * * * thence west * * * to low-water mark on the shore of Port Susan; thence southeasterly with the line of low-water mark along said shore to the shores of Tulalip Bay and Port Gardner, with all the meanderings thereof, and across the mouth of Ebey's Slough to the place of beginning."

The following sketch exhibits the land:

It is contended by the plaintiff that the meander line along the shore should extend from the most southerly point of the reservation (Priest Point) across the channel to Steamboat Slough, which would include the wedge-shaped tidelands colored black on the sketch; whereas the defendants contend that the boundary follows low-water mark along the channel to the mouth of Ebey's Slough, which, it is contended, is above the lands in question, and thence to the point of beginning. At the conclusion of the evidence defendant moved to dismiss.

According to the meander notes of the United States government, the mouth of Ebey's Slough is practically at "X," indicated upon the sketch. The testimony shows that the land in question is a part of the tidelands which extend from and adhere to Smith Island; that these lands are separated by a deep-water channel on the west and

north, and are independent of the reservation; that Steamboat Slough, which is navigable, is north of the land, and the water of Port Gardner is west and forms a navigable channel between the reservation and the land in question entering into Ebey Slough. I think it must be apparent from an examination of the treaty and likewise of the executive order, that the purpose was to grant to the Indians tillable land with such accretions as would naturally belong thereto. I do not think that it could have been the intention of the executive order to have included tidelands which were entirely separated and segregated from the uplands of the reservation. If it had been the intention to grant any special water privileges across the navigable water upon which the reservation borders, fitting language would have been employed. A casual reading of the executive order, together with a consideration of the mouth of Ebey Slough as fixed by the United States government notes, however, is conclusive upon the plaintiff. The mere fact that the executive order, in general terms, reads "southeasterly" with the line of low-water mark "along said shore * * * of and across the mouth of Ebey Slough to the place of beginning," cannot be read to extend across the waters of Port Gardner, but must be carried to the mouth of Ebey Slough, even though the course may not be directly southeasterly to the point of commencement.

The motion to dismiss is granted.